IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| CALVIN ANDRUS, | : | Case No. 1:24-cv-572 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| KRAIG KUNZ, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 13). Plaintiff filed a Response in Opposition (Doc. 16), to which Defendants filed a Reply in Support (Doc. 18). Thus, the matter is ripe for review. For the following reasons, Defendants' Motion to Dismiss is **DENIED**.

## ALLEGED FACTS

Plaintiff Calvin Andrus is a freelance photojournalist who regularly documents newsworthy events in Cincinnati, Ohio, through video recordings. (Compl., Doc. 1, ¶ 7.) Plaintiff has worked as a photojournalist for thirty years, routinely monitoring police and fire communications to respond quickly to these events. (*Id.* at ¶ 8.) Defendant Kraig Kunz ("Sgt. Kunz") is a police sergeant with Defendant City of Cincinnati Police Department ("CPD"), collectively referred to as Defendants. (*Id.* at ¶¶ 2-3.)

On November 19, 2023, Plaintiff arrived on the scene of a severe automobile collision on Spring Grove Avenue in Cincinnati. (Compl., Doc. 1, ¶ 11.) CPD had set up

a perimeter with yellow tape to restrict access to the scene of the collision. (*Id.* at ¶ 12.) Plaintiff began recording video of the police and collision site with his phone, standing outside the perimeter of the yellow tape. (*Id.* at ¶ 13.) Sgt. Kunz then approached Plaintiff and ordered him to leave the scene. (*Id.* at ¶ 14.) Plaintiff refused to leave, advising Sgt. Kunz that he stood outside the cordoned-off area. (*Id.* at ¶ 15.) Sgt. Kunz and Plaintiff engaged in a debate where Sgt. Kunz ordered Plaintiff to leave and threatened arrest, while Plaintiff repeatedly asserted his right to remain in place and record the scene. (*Id.* at ¶¶ 16-17.) Finally, Sgt. Kunz arrested Plaintiff, restrained him with handcuffs, and placed him in the back of a police cruiser. (*Id.* at ¶ 18.)

While sitting in the police cruiser, Plaintiff observed other individuals enter the scene that was blocked by police tape; Plaintiff alleges that they were not engaged in any First Amendment protected activities and were not arrested. (Compl., Doc. 1, ¶¶ 19-20.) Over thirty minutes after his arrest, Plaintiff suffered what was later diagnosed as a panic attack, causing him severe chest pain. (*Id.* at ¶ 21.) He was transported to a hospital for treatment. (*Id.*) Sgt. Kunz charged Plaintiff with Obstructing Official Business in violation of Ohio Revised Code § 2921.31, a second-degree misdemeanor. (*Id.* at ¶ 22.) The City of Cincinnati ultimately dismissed the charge in the interests of justice on June 25, 2024. (*Id.* at ¶ 24.)

## PROCEDURAL POSTURE

Plaintiff filed this Complaint against Defendants on October 11, 2024. (*See* Compl., Doc. 1.) Against Sgt. Kunz, Plaintiff brings claims of false arrest (Count 1), Fourth Amendment unreasonable seizure (Count 2), malicious prosecution under both Ohio

2

common law and 42 U.S.C. § 1983 (Counts 4 and 5), and abuse of process (Count 6). (*Id.* at ¶¶ 25-38, 47-68.) Plaintiff also brings a claim of First Amendment retaliation (Count 3) against both Defendants and seeks injunctive relief (Count 7) enjoining Defendants from unlawfully restricting the access of media representatives and the general public to observe or record newsworthy events, and from wrongfully arresting and charging persons lawfully exercising their rights to do so. (*Id.* at ¶¶ 39-46, 69-70.) On January 2, 2025, Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, which has been fully briefed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

## ANALYSIS

### I. Use of Video Footage

As a preliminary matter, the Court will first analyze the use of video footage that

3

Defendants provided in support of their Motion. In their Motion, Defendants rely on evidence from video footage captured by both Sgt. Kunz's and Plaintiff's body-worn cameras, as well as CPD's mobile-video recorder, or "dashcam." (*See* Motion, Doc. 13, Pg. ID 34-35.) Defendants provided this footage to the Court on December 30, 2024. (*See* Notices of Manual Filing, Docs. 10, 11.) But, Plaintiff asserts that the Court cannot consider this footage when deciding Defendants' Motion to Dismiss because it is outside the pleadings. (Response, Doc. 16, Pg. ID 171.) The Court will therefore analyze whether the video footage is properly before the Court at this stage of litigation.

Generally, when deciding a motion to dismiss, a court can only consider the materials which are properly before it. *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). "[A] Rule 12(b)(6) motion should be decided solely on the complaint." *Id.* But, there is an exception to this general rule that is relevant here. First, a court may consider video footage evidence beyond the pleadings when "the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events." *Saalim v. Walmart, Inc.*, 97 F.4th 995 (6th Cir. 2024) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Plaintiff objects to Defendants' use of this video footage in support of their Motion. (Response, Doc. 16, Pg. ID 171.) Relying on *Saalim*, Plaintiff argues that the Court cannot consider the footage because the videos do not "blatantly contradict" or "utterly discredit" Plaintiff's version of events. (*Id.* (citing *Saalim*, 97 F.4th at 1002).) As the Sixth Circuit has stated, the footage must be so contradictory that "no reasonable jury could watch the video and agree with the plaintiff." (*Id.* (quoting *Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2018)) (cleaned up).) In *Osberry*, the Sixth Circuit upheld the district

4

court's finding that it could not consider video footage of the plaintiff's arrest when analyzing the motion on the pleadings. 750 F. App'x at 391. Instead, the court reiterated that, at the pleading stage of litigation, it can "rely on the well-pleaded allegations in the complaint and leave further evaluation of the video to either the district court at summary judgment or the jury at trial." *Id.*

Likewise, according to Plaintiff, the video footage here does not contradict or discredit his claims and the Court cannot consider when deciding Defendants' Motion. (Response, Doc. 16, Pg. ID 172.) In their Reply, Defendants simply state that the videos do contradict Plaintiff's claim that he was arrested without probable cause. (Reply, Doc. 18, Pg. ID 236.) The Court, though, having viewed the footage Defendants provided, does not agree with Defendants' statement. The footage does not "blatantly contradict" or "utterly discredit" Plaintiff's version of events as pled in his Complaint.

Nevertheless, Defendants argue that the Court still must consider the footage because it is "central to Sgt. Kunz's claim" of qualified immunity. (Reply, Doc. 18, Pg. ID 236.) In support of this claim, Defendants point to Sixth Circuit case law allowing the consideration of videos at the motion-to-dismiss stage in qualified immunity cases. (*Id.* (citing *Bell v. City of Southfield,* 37 F.4th 362, 364 (6th Cir. 2022)).) In *Bell*, the court allowed the use of videos at the early stage of litigation because it was central to an officer's qualified immunity defense. 37 F.4th at 364. But, the court reiterated the narrow limitation placed on the use of the videos at the motion-to-dismiss stage. *Id.* Specifically, the Sixth Circuit acknowledged that it could only rely on the videos over the complaint "to the degree the videos are clear and blatantly contradict or utterly discredit the plaintiff's

5

version of events." *Id.* (cleaned up). Thus, the videos were allowed for the qualified immunity case because the "uncontroverted video evidence easily resolves the case." *Id.* So, the court in *Bell* maintained the same standard as the one used in *Saalim* and *Osberry*: the video evidence must indisputably contradict Plaintiff's allegations. *Id.* It merely applied this standard in the qualified immunity context.

Defendants state that the video indisputably shows that Sgt. Kunz is entitled to qualified immunity. The Court will address Defendants' qualified immunity defense in greater detail below. But, to overcome a qualified immunity defense, a plaintiff must first show that an officer violated his constitutional rights, and then that the right was clearly established. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Here, the Court still finds that the footage does not blatantly contradict Plaintiff's allegations. Importantly, the videos do not discredit Plaintiff's constitutional rights claims. Thus, the video footage does not show that Sgt. Kunz is uncontrovertibly entitled to qualified immunity. On these grounds, the Court will not consider the videos over the pleadings on Defendants' Motion to Dismiss.

## II. Defendants' Motion to Dismiss

Having established that the video footage Defendants submitted will not be included in the Court's analysis of their Motion to Dismiss, the Court now moves onto the merits of the Motion. Defendants argue that Plaintiff fails to state a claim upon which relief can be granted for each of his eight claims. The Court will address each claim in turn.

### a. False Arrest, Malicious Prosecution, and Unreasonable Search and Seizure Claims (Counts 1, 2, 4 & 5)

Plaintiff alleges false arrest and malicious prosecution under both 42 U.S.C. § 1983 and Ohio common law, and Fourth Amendment unreasonable seizure under 42 U.S.C. § 1983. Plaintiff's Response and Defendants' Reply both collapse the analyses for all four claims into a single analysis. (*See* Response, Doc. 16, Pg. ID 173-74; Reply, Doc. 18, Pg. ID 237-38.) Indeed, to survive a motion to dismiss, all four claims require Plaintiff to allege a lack of probable cause for his arrest. *See Estep v. Combs*, 366 F. Supp. 3d 863, 881 (E.D. Ky. 2018) (holding that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient factual matter to plausibly show that the arrest was made without probable cause); *Graves v. Mahoning County*, 821 F.3d 772, 774 (6th Cir. 2016) (finding the same for Fourth Amendment unreasonable seizure claims); *Gonzalez v. Kovacs*, 687 F. App'x 466, 469 (6th Cir. 2017) (finding the same for malicious prosecution claims under § 1983); *Borthwick v. Dept. of Bldgs. & Inspections*, No. C-210315, 2022 WL 1197381, at *3 (Ct. App. Ohio Apr. 22, 2022) (finding the same for Ohio malicious prosecution claims); *see also Briner v. City of Ontario*, No. 1:07-CV-129, 2007 WL 2891343, at *4 (N.D. Ohio Sept. 28, 2007) ("[M]alice may be inferred from the absence of probable cause, and thus the absence of probable cause is the gist of an action for malicious prosecution."). Thus, the Court will analyze each of these four claims to determine whether Plaintiff sufficiently pled a lack of probable cause.

Turning first to Plaintiff's false arrest claim, such a claim survives a Rule 12(b)(6) motion when it clearly details the defendant's actions that demonstrate a lack of probable

7

cause. *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016). And, if the defendant's claims contradict the well-pleaded facts in the plaintiff's complaint, the court still must accept the plaintiff's plausible allegations as true, which can be sufficient to overcome the motion. *Crawford v. Geiger*, 996 F. Supp. 2d 603, 621 (N.D. Ohio 2014). In contrast, courts have dismissed false arrest claims when the complaint merely alleges "vague, conclusory assertions and boilerplate language," and lacked sufficient factual support for the lack of probable cause. *Thomas v. Noder-Love*, 621 F. App'x 825, 828, 832 (6th Cir. 2015). For instance, in *Thomas*, the defendant misidentified the plaintiff and arrested him. The plaintiff then sued, alleging a false arrest claim. The court upheld dismissal of the plaintiff's false arrest claim because he did not allege that the defendants knew they had misidentified him at the time of arrest; thus, the plaintiff had failed to allege facts showing a lack of probable cause.

Here, Defendants assert that they, too, had probable cause to arrest Plaintiff based on the elements of the offense under Ohio Revised Code § 2921.31. (Motion, Doc. 13, Pg. ID 39-40.) They point to courts' broad interpretation of the statute, stating that the Sixth Circuit recognizes that a violation occurs if the individual charged made it "more difficult" for law enforcement to gain control of a situation. (*Id.* (quoting *Howse v. Hodous*, 953 F.3d 402, 408 (6th Cir. 2020)).) And, according to Defendants, Plaintiff made it more difficult for Defendants to gain control of the situation by standing in the roadway, becoming argumentative, and generally being noncompliant as they were attempting to move the crime scene farther back. (*Id.*)

8

Plaintiff responds that Defendants did not have probable cause as he was not obstructing official business. (Response, Doc. 16, Pg. ID 174.) First, Plaintiff states that Ohio courts emphasize the "affirmative act" element of the offense. (*Id.* at Pg. ID 173.) Specifically, "every minor delay, annoyance, irritation, or inconvenience" does not constitute obstruction of official business. (*Id.* (quoting *State v. Harris*, 121 N.E.2d 21, 28 (Ohio Ct. App. 2018)).) Additionally, according to Plaintiff, merely refusing to "get off the street" does not constitute an affirmative act. (*Id.* (citing *In re S.J.*, 225 N.E.2d 368, 374 (Ohio Ct. App. 2023)).) And, Plaintiff avers that he was engaging in protected conduct, undermining the "without privilege" element of the offense. (*Id.*) Finally, Plaintiff points to the lack of nexus between his action and the alleged obstruction, stating that, for bystanders, "there must be some clear nexus between the individual's affirmative act and the alleged obstruction." (*Id.*)

In their Reply, Defendants point out that Plaintiff's reliance on *In re S.J.* was improper, as that case involved analysis of the "reasonable doubt" standard, not the "probable cause" standard. (Reply, Doc. 18, Pg. ID 237.) And, reasonable doubt is a lower standard. (*Id.* (citing *Gardner v. Harrod*, 656 F. App'x 755, 759 (6th Cir. 2016)).) This discussion, however, extends beyond the issue at hand. Lack of probable cause is indeed required for a false arrest claim. And the existence of probable cause is a defense to a false arrest claim. But, at this stage of litigation, with only the pleadings before it, the Court simply must determine whether Plaintiff's Complaint plausibly alleges that Defendants lacked probable cause to make the arrest. Like in *Crawford*, the Court must construe all of Plaintiff's factual allegations as true, even if Defendants' version of events contradicts

9

those allegations. Plaintiff states in his false arrest claim that he recorded the police while standing behind the police line. (Compl., Doc. 1, ¶ 29.) He does not allege that the police were attempting to expand the crime scene to include the area where he was standing. Viewing these facts in a light most favorable to Plaintiff, the Court finds that Plaintiff did not make it more difficult for Defendants to gain control of the situation. Unlike in *Thomas*, Plaintiff's claim contains more than mere conclusory allegations or a recitation of the elements; instead, it provides factual support to show a lack of probable cause. Thus, the false arrest claim cannot be dismissed.

Moving onto the unreasonable seizure and malicious prosecution claims, as the Court noted above, the analysis of these claims is substantially similar to that of the false arrest claim. Defendants themselves argue that the claims all fail because "Sgt. Kunz had probable cause to arrest." (Motion, Doc. 13, Pg. ID 40-41.) Specifically, under the Fourth Amendment, Defendants assert that an officer can seize someone if he has probable cause that the person has violated the law. (*Id.* at Pg. ID 41 (citing *Howse*, 953 F.3d at 409).) Similarly, malicious prosecution claims under both Ohio law and 42 U.S.C. § 1983 require a plaintiff to demonstrate a lack of probable cause for the criminal prosecution. (*Id.*) Defendants' argument for dismissal of these claims rests on the same argument they made for dismissal of the false arrest claim: Sgt. Kunz had probable cause to arrest Plaintiff. (*Id.*)

As previously mentioned, at this stage in the proceedings, the Court is bound by the four corners of Plaintiff's Complaint and must consider only the allegations contained on its face. Thus, for these claims, in order to overcome a Rule 12(b)(6) motion, the

10

relevant question is whether the complaint plausibly alleges a lack of probable cause. Courts routinely dismiss § 1983 claims, like Plaintiff's unreasonable seizure and malicious prosecution claims, at this stage where plaintiffs fail to allege facts demonstrating that the defendant lacked probable cause. *See, e.g., Ghaster*, 913 F. Supp. 2d at 454 (dismissing complaint that failed to identify which charges allegedly lacked probable cause). The same is true for malicious prosecution claims brought under Ohio law. *See Rogers v. Horwitz*, No. 1:20-CV-2568, 2023 WL 6383796, at *14 (N.D. Ohio Sept. 29, 2023) (dismissing Ohio malicious prosecution claim where the plaintiff failed to plead sufficient facts showing lack of probable cause). Conversely, courts have permitted § 1983 claims for unreasonable seizure under the Fourth Amendment to proceed when plaintiffs adequately allege that the arresting officer lacked probable cause. *See Stacy v. Clarksville Police Dep't*, No. 3:24-CV-470, 2025 WL 880149, at *5 (M.D. Tenn. Mar. 21, 2025). Like the plaintiff in *Stacy*, Plaintiff here alleges that his arrest by Defendant occurred while Defendant was acting under color of state law and that the arrest was made without probable cause. (Compl., Doc. 1, ¶¶ 29, 35.) Accepting these allegations as true and viewing them in the light most favorable to Plaintiff, the Complaint sufficiently alleges a lack of probable cause and thus these claims can proceed.

### b. First Amendment Retaliation Claim (Count 3)

Plaintiff claims that his arrest was undertaken in retaliation for exercising his First Amendment rights. (Compl., Doc. 1, ¶¶ 39-46.) Specifically, Plaintiff states that his public recording of police is "robustly protected by the First Amendment," and that his arrest was "substantially motivated by the exercise of that protected conduct." (*Id.* at ¶¶ 41-42.)

11

In their Motion, however, Defendants argue that the Sixth Circuit has not held that a First Amendment right to record police in public exists. (Motion, Doc. 13, Pg. ID 42.) Indeed, the Sixth Circuit noted that "the right [to record police] is not clearly established." *Clark v. Stone*, 998 F.3d 287, 303 (6th Cir. 2021). Courts throughout the circuit disagree on whether the First Amendment protects an individual who records public officials. *See, e.g., Crawford v. Geiger*, 996 F. Supp. 2d 603, 614-15 (N.D. Ohio 2014) (finding a First Amendment right to "openly film police officers carrying out their duties"), *reversed on other grounds*, 656 F. App'x 190 (6th Cir. 2016); *Hils v. Davis*, No. 1:21-CV-475, 2022 WL 769509, at *8 (S.D. Ohio Mar. 14, 2022) ("[N]either the public nor the media has a First Amendment right to videotape, photograph, or make audio recordings of government proceedings that are by law open to the public.").

At this stage, however, the Court declines, and indeed finds it unnecessary, to address the existence of a First Amendment right to record the police. Rather, the only issue before the Court is whether, viewing the Complaint in the light most favorable to Plaintiff, the Court finds the claim for First Amendment retaliation plausible on its face. "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for exercising his rights. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). A claim for First Amendment retaliation has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct." *Freeman*, 667 F. Supp. 3d

12

at 660 (citing *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2014)). Although the existence of probable cause will defeat a First Amendment retaliation claim, an exception exists when "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" arrested. *Rideout*, 691 F. Supp. 3d at 826.

Plaintiff alleges that he was engaged in the protected conduct of recording the police when Sgt. Kunz arrested him without probable cause, and that the arrest was "substantially motivated" by his exercise of that protected conduct. (Compl., Doc. 1, ¶ 42.) In support of this contention, Plaintiff describes that Sgt. Kunz approached him while he was outside of the police tape perimeter and threatened to arrest him if he did not leave. (*Id.* at ¶¶ 15-16.) Further, Plaintiff claims that the arrest prevented him—and would likewise deter an ordinary person in the situation—from continuing to record the police. (*Id.* at ¶ 42.) And, he states that he would not have been arrested had he not been engaged in his protected First Amendment activity at the scene. (*Id.* at ¶ 43.) Specifically, Plaintiff asserts that while sitting in the police cruiser after his arrest, he witnessed other individuals enter the scene; those individuals did not engage in protected conduct and were not arrested. (*Id.* at ¶¶ 19-20.) Extending the claim to CPD, Plaintiff attributes the arrest to a policy or custom of CPD that "exhibits deliberate indifference to the protection of citizens' First Amendment rights." (*Id.* at ¶ 44.)

Viewing these allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff has stated a claim for First Amendment retaliation that is plausible on its face. Rather than merely recite elements or state legal conclusions, Plaintiff has alleged facts that sufficiently plead all elements of the claim. He alleges that: (1) he recorded the police,

which some courts in this circuit have found to be protected activity; (2) the police arrested him, an adverse action that not only would deter others from engaging in that conduct, but that did prevent him from continuing the conduct; and (3) the police arrested him because of his recording, as there were others who entered the scene and were not arrested. Although this Court declines to adopt a stance on whether recording police is a protected activity, it still finds that, if one exists, Plaintiff has plausibly alleged that he engaged in such activity. Further, his claim that other similarly situated individuals who did not engage in the protected conduct were not arrested overcomes any probable cause defense to the claim at this stage of litigation. *See Rideout*, 691 F. Supp. 3d at 826. Therefore, dismissal of Plaintiff's First Amendment claim is not appropriate at this time.

### c. Abuse of Process (Count 6)

Defendants next challenge Plaintiff's claim for abuse of process. (Motion, Doc. 13, Pg. ID 44.) Plaintiff pleads, in the alternative from his malicious prosecution claim, a claim for abuse of process under Ohio common law. (Compl., Doc. 1, ¶¶ 63-68.) The elements of this tort are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co., et al.,* 626 N.E.2d 115, 116 (Ohio 1994)). Defendants state that Plaintiff merely supports his claim for abuse of process with "conclusory allegations." (Motion, Doc. 13, Pg. ID 44.) Specifically,

14

Defendants assert that the claim will not survive a motion to dismiss "when it is supported only by conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions." (*Id.* (quoting *Graham v. Best Buy Stores, LP,* 298 F. App'x 487, 497 (6th Cir. 2008)).) And, "there is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." (*Id.* (quoting *Graham*, 298 F. App'x at 497) (cleaned up).) Defendants argue that Plaintiff has only provided "a threadbare recital of the elements," and has not alleged any facts to support his claim. (*Id.*) Furthermore, according to Defendants, Sgt. Kunz did nothing more than "carry out [Plaintiff]'s arrest and prosecution until it was ultimately dismissed." (*Id.*)

In response, Plaintiff contends that his abuse of process claim must be viewed "in tandem with his other allegations, specifically his First Amendment [r]etaliation claim." (Response, Doc. 16, Pg. ID 178.) He points out that he specifically alleges the nature of Defendants' ulterior purpose: "deterring [Plaintiff] from engaging in his protected [First] Amendment right to record the police." (*Id.*; *see also* Compl., Doc. 1, ¶ 65; *Bickley v. Dish Network, LLC,* 751 F.3d 724, 734 (6th Cir. 2014) ("It is not enough to allege an ulterior purpose without explaining what that purpose actually was.").) Both Plaintiff and Defendants cite *Stanley v. Historic Newark Basket*, No. 2:22-CV-1783, 2023 WL 2652567 (S.D. Ohio Mar. 27, 2023), in their briefings. Plaintiff focuses on *Stanley*'s assertion that "abuse of process occurs when someone attempts to achieve through use of the court that which the court itself is powerless to order." 2023 WL 2652567, at *6; (*see also* Response, Doc. 16, Pg. ID 179). Meanwhile, Defendants point to the next line in *Stanley*, which says that "a

15

claim for abuse of process does not arise when a party uses the court to pursue a legal remedy that the court is empowered to give." *Id.*; (*see also* Reply, Doc. 18, Pg. ID 240.) Defendants claim that Plaintiff's Complaint "fails to allege facts showing that Sgt. Kunz or the City sought to achieve any collateral purpose" and thus, Defendants only sought a legal remedy that the court is empowered to give. (Reply, Doc. 18, Pg. ID 240; *see also Jaiyeola v. Bryan*, No. 23-1675, 2024 WL 3549163, at *2 (6th Cir. Feb. 12, 2024) ("Because [the plaintiff] failed to allege facts showing [the defendant] sought to achieve any collateral purpose . . . , the district court properly dismissed this claim.").)

But, such a bare allegation like the one in *Stanley* is not present here. Plaintiff specifically alleged that Defendants' arrest was "perverted to accomplish the malicious purpose of deterring [him] from engaging" in his First Amendment right to record the police. (Compl., Doc. 1, ¶ 65.) He supports this claim with other allegations throughout his Complaint where he describes that individuals on the scene who did not exercise their First Amendment rights were not arrested for obstructing police business, and that, but for his exercise of this right, he would not have been arrested either. (*Id.* at ¶¶ 42-43.) He then alleges that, as a result of this abuse of process, he has suffered damages, including "emotional distress, medical expenses, pain and suffering, and other damages." (*Id.* at ¶¶ 21, 66.) Thus, viewed in a light most favorable to him, these allegations support an abuse of process claim.

### d. Injunctive Relief (Count 7)

Defendants also challenge Plaintiff's request for injunctive relief. (Motion, Doc. 13, Pg. ID 45.) As Plaintiff points out, though, Defendants "erroneously confuse [his] request

for injunctive relief with a request for a preliminary injunction." (Response, Doc. 16, Pg. ID 179.) Indeed, injunctive relief is a form of requested relief under Federal Rule of Civil Procedure 8(a)(3), not its own claim. *Waleska A. Velez, et al. v. Cuyahoga Metro. Housing Auth., et al.*, No. 1:13-CV-1022, 2014 WL 847406 (N.D. Ohio Mar. 3, 2014). As such, at the pleading stage, Rule 8(a)(3) requires only "a demand for relief sought," as compared to the more stringent standard for standalone claims under Rule 8(a)(2). *Id.* A plaintiff need only state the demand and type of relief requested to make the demand. *Id.*; *see also* Fed. R. Civ. P. 8(a)(3). Plaintiff has sufficiently pled his demand for injunctive relief under Rule 8(a)(3). (*See* Compl., Doc. 1, ¶¶ 69-70.) In fact, Defendants recognize this in their Reply, altering their argument to seek dismissal of the claim for relief because Plaintiff's other claims must be dismissed. (Reply, Doc. 18, Pg. ID 242.) The Court finds that Plaintiff's Complaint properly demands injunctive relief; as the other claims have not been dismissed, so too shall his demand for relief proceed.

### e. Sgt. Kunz's Qualified Immunity Defense (All Counts)

Finally, Defendants assert that Sgt. Kunz is entitled to qualified immunity and all claims against him must be dismissed. (Motion, Doc. 13, Pg. ID 46-47.) "Qualified immunity protects government officials like . . . police officers from being liable for money damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would know." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) (cleaned up). For a right to be clearly established, the "constitutionality of the officer's conduct must have been beyond debate in the particular circumstances before him." *Id.* (cleaned up).

17

Defendants claim that, because Plaintiff has failed to allege that Sgt. Kunz violated his constitutional rights, or that the rights were clearly established, qualified immunity protects Sgt. Kunz from suit. (Motion, Doc. 13, Pg. ID 47.) Plaintiff, in response, argues that Sgt. Kunz did violate his First Amendment right to record the police, and that right is clearly established, even though the Sixth Circuit has not expressly announced the right. (Response, Doc. 16, Pg. ID 180-81.) The central question in the analysis is "whether the state of the law gave the Defendants fair warning that their alleged treatment of [Plaintiff] was unconstitutional." (*Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (cleaned up)).) Plaintiff states that Defendants incorrectly characterize the state of the law as unclear because the Sixth Circuit's silence on the issue does not create a circuit split on the existence of the right. (*Id.*) In their Reply, Defendants point out that the Sixth Circuit emphasizes the need for specificity over generality when defining a clearly established right for the purpose of determining qualified immunity. (Reply, Doc. 18, Pg. ID 241-42.) Thus, in Defendants' estimation, Plaintiff has failed to point to clearly defined case law establishing the right to record police while in the roadway. (*Id.*)

The Court, however, "must be mindful of the stage of the proceedings" when addressing qualified immunity as a defense. *Novak*, 932 F.3d at 426. While the Sixth Circuit highlights the importance of resolving "qualified immunity claims at the earliest possible point of litigation, we cannot resolve such claims when we need more factual development to do so." *Id.* Indeed, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (cleaned up). Instead, "it is preferable to resolve

18

the threshold question of a government officer's entitlement to qualified immunity at summary judgment, not dismissal under Rule 12." *Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025) (cleaned up). Though this preference is only a "general one, not an absolute one," a court should resolve the question of qualified immunity prior to discovery only if "plaintiffs present clearly insubstantial claims against government officials." *Freeman*, 667 F. Supp. 3d at 656 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020)) (cleaned up). As explained above, Plaintiff has not presented "clearly insubstantial claims" regarding his constitutional claims; indeed, his claims are well-pled. As such, the Court refrains from resolving Sgt. Kunz's qualified immunity claim until the factual record has been developed.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 13). Plaintiff's claims **SHALL PROCEED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
By: _____
JUDGE MATTHEW W. McFARLAND