## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **CALVIN ANDRUS,** | : | **Case No. 1:24-cv-572** |
| | : | |
| **Plaintiff,** | : | **Judge Matthew W. McFarland** |
| | : | **Magistrate Judge Stephanie K. Bowman** |
| | : | |
| **-vs-** | : | **DEFENDANTS' MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| **KRAIG KUNZ, et al.,** | : | **PURSUANT TO FED. R. CIV. P. 56** |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, through the accompanying memorandum of law, Defendants Kraig Kunz (individually "Sgt. Kunz") and the City of Cincinnati (collectively, the "City") hereby move for summary judgment on Plaintiff Calvin Andrus's ("Andrus") Complaint. There are no genuine disputes of material fact and the City is entitled to judgment as a matter of law.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**City Solicitor**

**/s/ Katherine C. Baron**
Katherine C. Baron (0092447)
Victoria Gooder (0102870)
Senior Assistant City Solicitor
801 Plum Street, Room 214
Cincinnati, Ohio 45202
(513) 352-4705
Fax: (513) 352-1515
Katherine.baron@cincinnati-oh.gov
Tori.gooder@cincinnati-oh.gov
*Counsel for Defendants*

**/s/ Kimberly A. Rutowski**
Kimberly A. Rutowski (0076653)

Jeffery D. Gray (0101380)
Lazarus Law
525 Vine Street, Suite 2210
Cincinnati, Ohio 45202
(513) 721-7300
Fax: (513) 721-7008
krutowski@hllmlaw.com
jgray@hllmlaw.com
*Counsel for Defendant Kunz in his individual
capacity*

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

This case stems from Andrus's misguided belief that his self-made media credentials, permit him to go beyond crime tape for any reason as long as "he is not interfering with a crime scene." *See* Andrus Depo., Doc. 35, PageID # 403, 491. However, Andrus ignores that he was potentially interfering with the crime scene as skid marks extended beyond the crime tape and were located within feet of where he was standing. Thus Sgt. Kunz's order to "back up" was lawful and Andrus's decision to "challenge" or "educate" Sgt. Kunz created probable cause for his arrest for Obstructing Official Business. The evidentiary record fails to support Andrus's claims that his arrest was unlawful, done with any ulterior motive, or to chill Andrus's First Amendment rights. As such, the City moves this Court to grant judgment in its favor.

## II.   STATEMENT OF FACTS

On November 19, 2023, City of Cincinnati police officers were at the scene of a fatal, single-car accident on Spring Grove Avenue. (Compl., Doc. 1, ¶ 11). The police department had set a perimeter with yellow tape to restrict access to the scene of the

2

collision. (*Id.* at ¶ 12; Andrus Depo., Doc. 35, PageID # 438; Kunz Depo., Doc. 41, PageID # 815-816). Andrus, a freelance photojournalist, arrived on scene and positioned himself at the intersection where two pieces of crime scene tape came together and began recording skid marks. (Andrus Depo., Doc. 35, PageID # 438). During the investigation, Sgt. Kunz noticed that skid marks extended outside the police tape and observed Andrus standing at the police tape. (Kunz Depo., Doc. 41, PageID # 825, 830). Seeing the need to expand the crime scene to encompass the newly discovered skid marks, Sgt. Kunz approached Andrus and repeatedly asked him to back up. (Kunz BWC, Doc. 35-8 at 0:40-1:20; Andrus BWC Doc. 35-9 at 2:00-3:40; Kunz Depo. Doc. 41, PageID # 830). Instead of complying, Andrus refused, "challenged" Sgt. Kunz, attempted to "educate him," and insisted that, as a member of the media, he was permitted in crime scenes. (Andrus Depo., Doc. 35, PageID # 447, 449, 450; Kunz BWC, Doc. 35-8 at 0:40-1:20; Andrus BWC, Doc. 35-9 at 2:00-3:40).

Andrus's refusal to move from the area of the skid marks hampered Sgt. Kunz's ability to carry out his lawful duty – to expand and preserve the crime scene – so Sgt. Kunz arrested and charged Andrus with Obstructing Official Business. (Compl., Doc. 1, ¶ 22; *see* Criminal Complaint attached as Exhibit A; *see also* Kunz Depo., Doc. 41, PageID # 841-842 ("I can say that he was - - I recognized him as an immediate no person. And he was - - he was adamant about staying where he was. At that point, it turns my job into something different. At that point, he is now impeding or

3

obstructing me to be able to do my job.")). On June 25, 2024, the charge was dismissed. (*Id*. at ¶ 24).

## III.  STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment the district court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Further, if the evidence is merely colorable. *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. 253, 290 (1968), judgment may be granted. *Anderson* at 249.

## IV.  ARGUMENT

Andrus's claims rely on nothing more than personal beliefs of what members of media should be permitted to do at crime scenes and are not properly grounded in law. Rather, what the record shows is that Andrus's resistant behavior interfered

with Sgt. Kunz's ability to investigate the car accident, thus creating probable cause to arrest Andrus for Obstructing Official Business. Moreover, the record does not support Andrus's assertion that Sgt. Kunz arrested him with an ulterior motive or to deter him and others from recording the police. As such, summary judgment is appropriate.

1. **Judgment in favor of the City is appropriate on Plaintiff's false arrest, unreasonable seizure, and malicious prosecution claims because the objective facts show there was probable cause to believe that Andrus impeded Sgt. Kunz's expansion of the crime scene (Counts I-II, IV).**

To succeed on his false arrest, unreasonable seizure, or malicious prosecution claim, Andrus must prove that Sgt. Kunz lacked probable cause to arrest. *See Burley v. Gagacki*, 834 F.3d 606, 613-14 (6th Cir. 2016); *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020); *Dillion v. Hamlin*, 718 F. Supp. 3d 733, 744-45 (S.D. Ohio 2024); *Borthwick v. Dept. of Bldgs. & Inspections*, 2022-Ohio-1335, ¶ 15 (1st Dist.). "An officer possesses probable cause to arrest when, at the moment the officer seeks the arrest, 'the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense.'" *Id.* (internal citation omitted) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Sgt. Kunz charged Andrus with obstructing official business. (Compl., Doc. 1, ¶ 22). In order to secure a conviction for obstructing official business, the State must prove that the accused "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized

5

act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *State v. Davis*, 2026-Ohio-2102, ¶ 6 (1st Dist.) (quoting *State v. Brantley*, 2022-Ohio-597, ¶ 16 (1st Dist.)). As noted by the Sixth Circuit, Ohio courts have interpreted this crime broadly. *Howse* at 408. For example, someone may be convicted of obstructing official business if they make it "more difficult" for law enforcement to gain control of a situation. *Id.* (citing *State v. Florence*, 2014-Ohio-2337, ¶ 3 (12th Dist.)). Here, Andrus did just that.

At the time Andrus was arrested, officers were investigating a fatal automobile accident on Spring Grove Avenue and had set up a perimeter of police tape around the accident to restrict access. (Compl., Doc. 1, ¶ 11-12). As he was observing the scene, Sgt. Kunz identified additional evidence, including tire marks, located outside of the police tape. (Kunz Depo., Doc. 41, PageID # 824, 830). As he followed the tire marks, Sgt. Kunz observed Andrus standing at the police tape. (*Id.*, at PageID # 824-825). The tire marks extended behind where Andrus was standing. (*Id.*, PageID # 825, 830). Because there were tire marks outside the police tape, Sgt. Kunz responded by expanding the crime scene which required Andrus to move back from where he was standing. (Kunz BWC, Doc. 35-8 at 0:40-1:20; Andrus BWC, Doc. 35-9 at 2:00-3:40; Kunz Depo., Doc. 41, PageID # 830). In both Sgt. Kunz and Andrus's BWC, Sgt. Kunz is seen pointing across the street and repeatedly telling Andrus that he needs to back up so that the officers could secure the scene. (Andrus Depo., Doc. 35, PageID # 440; Kunz BWC, Doc. 35-8 at 0:40-1:20; Andrus BWC, Doc. 35-9 at 2:00-3:40; Kunz

6

Depo., Doc. 41, PageID # 830). Notably, Andrus refused. (Kunz BWC, Doc. 35-8 at 0:40-1:20; Andrus BWC, Doc. 35-9 at 2:00-3:40).

Instead, Andrus "challenged" Sgt. Kunz and "was attempting to educate [him] on the law," so that "he would understand that I had the ability to be there." (Andrus Depo., Doc. 35, PageID # 447, 449, 450). Sgt. Kunz explained to Andrus that this impeded or obstructed his ability to do his job. (Kunz Depo., Doc. 41, PageID # 842). Further, Sgt. Kunz explained that "[w]hen I was trying to escort him out of the crime scene area, what was going to be the crime scene area, the expanded part, he pulled away. He even went back towards where he was. He was being not just resistive tension. It was actually pulling away and walking, continued trying to walk back up to the original set crime scene tape." *Id.* at PageID # 836.

In a similar case, the First District found that there was sufficient evidence to support an adjudication–meaning a higher burden than probable cause–for obstructing official business where the individuals' "overall pattern of behavior was resistance." *In re M.H.*, 2021-Ohio-1041, ¶ 22 (1st Dist.). The individual in *M.H.*, like Andrus, exhibited "hostility and unwillingness to cooperate in physical and verbal ways and from the body-camera video, the individual had an argumentative demeanor. *Id.* Similarly, in *State v. Wellman*, the court upheld a conviction for obstructing official business because the defendant's "entire course of conduct" prevented the officers from gaining control of the situation in a crowded club." 2007-Ohio-2953, ¶ 13 (1st Dist.). There, the defendant actively prevented officers from

talking to the person they believed was the manager of the club, not just by asking questions, "but by being belligerent and argumentative." *Id.*, at ¶ 13.

As the evidentiary record shows, Andrus made it more difficult for Sgt. Kunz to investigate the accident and expand the crime scene. Accordingly, Sgt. Kunz had probable cause to arrest. Therefore, judgment in favor of the Defendants is warranted on Andrus's federal and state law claims for false arrest, unreasonable seizure, and malicious prosecution.

**2. The record does not show that Sgt. Kunz arrested and prosecuted Andrus to deter him from engaging in his First Amendment right to record the police (Count VI).**

Andrus's abuse of process claim fairs no better than the others. The record does not include any evidence that Sgt. Kunz had an ulterior motive when he was arrested and prosecuted. Instead, the record shows that although the charges against Andrus were ultimately dismissed, Sgt. Kunz simply carried out the legal process to its conclusion.

To state a claim for abuse of process, a plaintiff must allege "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damages have resulted from the wrongful use of process." *Premier Signature Renovations, LLC v. Loan Depot, Inc.*, 2026 U.S. Dist. LEXIS 88621, * 11 (S.D. Ohio) (internal citations omitted) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 68 Ohio St. 3d 294, 298 (1994)). To establish the second element, a "plaintiff must identify both an act committed during

4934-4609-8613, v. 6

the process that was not proper in the normal conduct of the proceeding and the defendant's ulterior motive." *Atsas v. Bowen*, 2026 U.S. App. LEXIS 17161, *25 (6th Cir.) (internal citation omitted) (quoting *Palivoda v. Felix*, 2011-Ohio-5231, ¶ 8 (10th Dist.)). "Therefore, there is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (quoting *Yaklevich* at 298 n.2).

Andrus seemingly argues that Sgt. Kunz arrested him to deter him from engaging in his First Amendment right to record the police. (Compl., Doc. 1, ¶ 65). To support this assertion, Andrus points to three individuals who were not engaged in First Amendment activities that entered the crime scene and were not arrested. (*Id.*, ¶ 19; Andrus Depo., Doc. 35, PageID # 460). They include a Duke Energy employee and two unnamed individuals. (*Id.*) However, the record shows that the Duke Energy employee was there because live power lines needed to be shut off so no one was electrocuted. (IIS, Report, Doc. 35-1, PageID # 549; Neville Depo., Doc. 37, PageID # 701; Kunz Depo., Doc. 41, PageID # 822; Lehman Depo., Doc. 39, PageID # 777). The unnamed individuals that Plaintiff references exited a liquor establishment at the corner of the crime scene that had not been taped off yet. (IIS Report, Doc. 35-1, PageID # 549). Moreover, when Andrus alerted Sgt. Kunz that the unnamed individuals were in the crime scene, they were told to exit and, unlike Andrus, they immediately complied. (*Id.*). Thus, there was no reason to arrest these three individuals for Obstructing Official Business. And using them as "comparators" fails

9

to demonstrate that Sgt. Kunz had an "ulterior motive" when he effectuated Andrus's arrest and prosecution. Therefore, judgment in favor of the City is appropriate.

### 3. The City and Sgt. Kunz are entitled to immunity on Andrus's state court claims.

Additionally, Sgt. Kunz is entitled to immunity under R.C. 2744.03 for Andrus's state tort claims of false arrest, malicious prosecution, and abuse of process. Under Ohio law, Sgt. Kunz is presumed immune from any state claims raised by Andrus, unless that immunity is stripped by R.C. 2744.03(A)(6). *Day v. DeLong*, 358 F.Supp.3d 687, 708 (S.D. Ohio 2019) (citing *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist. 1995)). R.C. 2744.03(A)(6) provides employees of political subdivisions with immunity, unless their acts fall within one of the following exceptions: (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were conducted with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) liability is expressly imposed upon the employee by a section of the Revised Code. For purposes of R.C. 2744.03(A)(6)(b), "malicious purpose" is the willful and intentional design to injure or harm another, generally seriously through unlawful or unjustified conduct. *Id.* (citing *Jones v. Norwood*, 2013-Ohio-350, ¶ 42 (1st Dist.)). "Bad faith" evinces a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Id.* "Wanton misconduct" is "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* (quoting *Anderson v.*

10

*Massillon*, 134 Ohio St.3d 380, at paragraph 3 of syllabus (2012)). Finally, "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another which is unreasonable under the circumstances and substantially greater than negligent conduct." *Id.* (quoting *Anderson* at paragraph 4 of syllabus).

As noted above, Andrus sets forth no evidence demonstrating that Sgt. Kunz acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Instead, the sole reason for Andrus's arrest was his behavior when Sgt. Kunz and other officers attempted to expand the crime scene. (Kunz Depo., Doc. 41, PageID # 849). Notably, Sgt. Kunz did not have any prior contact with Andrus, nor is there any evidence to suggest that Andrus's arrest was based on any "dishonest purpose." (Andrus Depo., Doc. 35, PageID # 477). Therefore, Sgt. Kunz is entitled to immunity from Andrus's state law tort claims and judgment in Sgt. Kunz's favor should be granted.

Similarly, with respect to the City, "determining whether a political subdivision is immune from liability involves a three-tiered analysis." *Day* at 709 (quoting *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 8). "The starting point is the general rule that political subdivisions are immune from tort liability." *Id.* (quoting *Shalkhauser v. Medina*, 2022-Ohio-222, ¶ 14). Under R.C. 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function." At the second tier, this

11

comprehensive immunity can only be abrogated pursuant to one of the five exceptions set forth at R.C. 2744.02(B). *Id.* (citing *Shalkhauser*, ¶ 16). "Finally, immunity lost to one of the R.C. 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability set forth in R.C. 2744.03." *Id.*

The City is a political subdivision and the provision of police services is a governmental function. *Id.* (citing R.C. 2744.01(C)(2)(a). Further, none of the exceptions set forth in R.C. 2744.02(A) apply to remove immunity here. As such, even if Sgt. Kunz acted negligently, the provision or non-provision of police services is specifically designated a governmental function under R.C. 2744.01(C)(2)(a). As such, the City is also immune from Andrus's state law claims and judgment is appropriate.

## B. The record is devoid of evidence to support a First Amendment Retaliation claim (Count III).

A First Amendment retaliation claim requires a plaintiff to show that (1) he "engaged in constitutionally protected speech," (2) he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech," and (3) "the protected speech was a substantial or motivating factor for the adverse action." *Menge v. Ash-Shafii*, 2026 U.S. App. LEXIS 10375, *6-7 (6th Cir.) (quoting *DeVooght v. City of Warren*, 157 F.4th 893, 898 (6th Cir. 2025)). Judgment in the City's favor is warranted because the law does not support Andrus's contention that he was engaged in protected activity and there is no evidence that he was actually arrested because he was engaged in First Amendment activity.

### 1. The Sixth Circuit has not held that there is a First Amendment right to record the police in public.

The state of the law does not support Andrus's contention that he was engaged in protected activity when he was recording the police. The United States Supreme Court and the Sixth Circuit have yet to hold that the public enjoys a First Amendment right to record police activities in public places. *Freeman v. Spolijaric*, 667 F.Supp.3d 636, 661 (S.D. Ohio 2023). Instead, what this Court has held is that the public has a First Amendment right to photograph and film police activities, "subject to reasonable time, manner, and place restrictions." *Id.* (quoting *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)). Here, Andrus's right to record in the spot he was standing falls short of meeting this reasonableness standard.

The government has wide leeway to regulate features of speech unrelated to its content, and those restrictions survive if "they are narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information." *Ison v. Madison Local School Dist. Bd. Of Edn.*, 3 F.4th 887, 893 (6th Cir. 2021) (internal citation omitted) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). One reasonable restriction is that people cannot continue to exercise their First Amendment rights when public safety concerns exist. *See Harcz v. Boucher*, 2023 U.S. App. LEXIS 23387, * 8 (6th Cir.). Such concerns existed here. Specifically, concerns about maintaining the integrity of evidence (Kunz Depo., Doc. 41, PageID # 830) and protecting the safety of the public from the downed powerlines (Lehman Depo., Doc. 39, PageID # 777). Moreover, just prior to Andrus's arrival, a motor vehicle had driven through the crime scene tape where he was standing. (Kunz MVR, Doc. 10 at 1:52; Kunz Depo., Doc. 41, PageID #

13

839). Clearly there were safety concerns Sgt. Kunz was acting upon when he ordered Andrus to move back.

### 2. Sgt. Kunz arrested Andrus because of his behavior, not because he was recording the police.

Under the third element, "the subjective motivation of the defendant is at issue." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)). The analysis for determining motive is well-developed. "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id.* If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment. *Id.* Notably, officers can point to "disruptive" behavior as a reason for taking action. *Id.*

Andrus fails to present any evidence that his First Amendment activity motivated Sgt. Kunz to arrest him. Rather, Andrus hypothesizes why Sgt. Kunz decided to expand the crime scene. "Again from my encounters that I had with the Cincinnati Police Department. They, generally, only expand their crime scenes when I arrive. And, again, it's usually done when they notice me. So, if they don't see me, they usually don't expand the crime scene, but once they see me, that is when the crime scene gets expanded." (Andrus Depo., Doc. 35, PageID # 478-79). However, this is simply not true. *See* Neville Depo., Doc. 37, PageID # 640 ("* * * We would not expand our crime scene to infringe on anybody's First Amendment rights.").

14

Indeed, Police Specialist Flamm explained that in crash investigations "crime scenes have to be large enough to contain all of the evidence. Oftentimes, we get crime scene tape up and after we have the crime scene set, upon doing a crime scene search looking for specific evidence, we realize, especially with car crashes, we have to move further back. * * * And in this case, the driver of the Accura, she was traveling at highway speeds in a residential area. So it does require quite the crime scene to capture all of the evidence. * * *" (Flamm Depo., Doc. 45, PageID # 970-971). Further, he explained that tire marks and different debris from car crashes are considered short-lived evidence, meaning that the evidence can be tampered with either intentionally or unintentionally by standing on it. *Id.* at PageID # 971; *see also* Lehman Depo., Doc. 39, PageID # 776-777 ("Q. Okay. In your experience, has there ever been a time when press was allowed inside the crime scene tape? A. Absolutely not. Q. And what's your understanding of the reason for that? A. Because we don't want them or anyone, you know, that could be messing with evidence. We—you know, we keep it a secured area just for that, you know, to preserve evidence, that, you know. * * *"). Thus, Andrus's continued presence in the crime scene could have altered the evidence. *Id.* at PageID # 978.

Furthermore, Andrus concedes that Sgt. Kunz (1) "never told me I could not record," (2) never told him to stop recording, (3) never asked Andrus why he was recording, and (4) never asked Andrus for his media credentials. (Andrus Depo., Doc. 35, PageID # 448-449). Therefore, regardless of whether Andrus was exercising his First Amendment rights, Sgt. Kunz would have asked him to back up because he was

15

expanding the crime scene and Andrus's presence in the crime scene could have disturbed or altered the evidence.

### C. Sgt. Kunz is entitled to qualified immunity.

Further, Sgt. Kunz is entitled to qualified immunity. Qualified immunity protects officials who make split-second decisions while protecting the public. *Bell v. City of S.field*, 37 F.4th 362, 367 (6th Cir. 2022) (citing Howse, 953 F.3d 402 at 407). Officers are entitled to qualified immunity unless they (1) violated a constitutional right and (2) that right was "clearly established" at the time of the wrongdoing. *Id.* (internal citation omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The plaintiff bears the burden of showing that the right was clearly established. *Id.* (citing *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021)). And in doing so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances encountered. *Id.* (citing *Cunningham* at 766). This inquiry "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Iqbal*, 556 U.S. 662, 741 (2009); *see also Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662, at *2-3 (U.S. Oct 18, 2021); *City of Tahlequah v. Bond*, No. 20-1668, 2021 WL 4822664, at *2 (U.S. Oct 18, 2021). That is why courts view officers' actions from the prospective of a reasonable officer in the particular situation that officer confronted. *Bell* at 367 (internal citation omitted) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

16

As explained above, the Sixth Circuit has not recognized a First Amendment right to record the police and, even if it had, the First Amendment is subject to reasonable time, place, and manner restrictions, such as not being able to exercise the right when there are public safety concerns–the exact situation here. As such, Andrus's activity was not protected by the First Amendment and Sgt. Kunz is entitled to qualified immunity.

## V.     Conclusion

For the foregoing reasons, the City respectfully requests that the Court grant judgment in its favor. There are no genuine issues of material fact and the record fails to provide support for the claims made in Andrus's Complaint.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**City Solicitor**

**/s/ Katherine C. Baron**
Katherine C. Baron (0092447)
Victoria Gooder (0102870)
Senior Assistant City Solicitor
801 Plum Street, Room 214
Cincinnati, Ohio 45202
(513) 352-4705
Fax: (513) 352-1515
Katherine.baron@cincinnati-oh.gov
Tori.gooder@cincinnati-oh.gov
*Counsel for Defendants*

**/s/ Kimberly A. Rutowski**
Kimberly A. Rutowski (0076653)
Jeffery D. Gray (0101380)
Lazarus Law
525 Vine Street, Suite 2210
Cincinnati, Ohio 45202
(513) 721-7300

17

Fax: (513) 721-7008
krutowski@hllmlaw.com
jgray@hllmlaw.com
*Counsel for Defendant Kunz in his individual capacity*

## CERTIFICATE OF SERVICE

I certify that on _____, a true and accurate copy of the foregoing Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Katherine C. Baron*
Katherine C. Baron (0092447)

18

4934-4609-8613, v. 6