**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CALVIN ANDRUS, Case No. 1:24-cv-572

Plaintiff,

v. Bowman, M.J.

KRAIG KUNZ, et al.,

Defendants.

**MEMORANDUM ORDER AND OPINION**

Plaintiff Calvin Andrus filed this action against Defendants City of Cincinnati and Sergeant Kraig Kunz. This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 47). For the following reasons, Defendants' Motion is GRANTED with respect to Counts I through VI. Count VII is DISMISSED without prejudice for lack of subject-matter jurisdiction.

## I. Standard of Review

When reviewing a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Keweenaw Bay*, 477 F.3d at 886.

After a moving party has carried its initial burden of showing that no genuine dispute of material fact remains, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). “The ‘mere possibility’ of a factual dispute is not enough.” *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence from which a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The court determines whether the evidence requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

**II. Factual Background**

On November 19, 2023, City of Cincinnati police officers were at the scene of a fatal, single-car accident on Spring Grove Avenue. (Doc. 41, Kunz Dep. at PageID 813-15). When Defendant Sergeant Kraig Kunz arrived, a perimeter of yellow crime scene tape had been established around the scene, which included downed electrical wires that were live. (*Id.* at PageID 816, 818; Doc. 37, Neville Dep. at PageID 701). A motor vehicle subsequently drove through the previously set crime scene tape and disregarded officers’ orders to turn around. (Doc. 41, Kunz Dep. at PageID 839; Doc. 10, Kunz MVR at 1:52-2:23).

Plaintiff Calvin Andrus—an independent photojournalist who documents public-safety incidents—learned of the crash over police radio traffic, drove to the scene, and began taking photos and videos on foot from outside the crime scene tape. (Doc. 35,

Andrus Dep. at PageID 438; Doc. 10, Kunz MVR at 26:45-29:00). Plaintiff then moved closer to the accident, walking west along the crime scene tape and positioning himself at the intersection of Spring Grove Avenue and the William P. Dooley Bypass. (*See* Doc. 35, Andrus Dep. at PageID 429, 432, 508). The sidewalk in that area was blocked by crime scene tape, and the travel lane where Plaintiff stood had been blocked by police vehicles. Plaintiff remained outside the crime scene tape while recording video of skid marks on the road. (Doc. 35, Andrus Dep. at PageID 438-39; Doc. 10, Kunz MVR at 29:00-29:30).

Sgt. Kunz noticed Plaintiff shortly after he changed positions. Kunz testified that, during the course of his crash-scene investigation, he observed tire skid marks extending from the crash into Spring Grove Avenue and beyond the crime scene tape near where Plaintiff was standing. (Doc. 41, Kunz Dep. at PageID 824-25, 830). Kunz testified that, because the skid marks extended outside the taped boundary, he determined that the crime scene should be expanded to encompass that evidence.[1] (*Id.* at PageID 830). Plaintiff contends that Kunz did not mention the skid marks during their encounter and disputes whether Kunz actually noticed them or approached Plaintiff for that purpose. (Doc. 50 at PageID 1090).

Both Plaintiff and Kunz were wearing body-worn cameras during their subsequent encounter. Kunz repeatedly stated to Plaintiff that "you gotta go" and "you gotta go back

[1] Police Specialist Mike Flamm, a traffic-unit investigator who measured and mapped the crash evidence, identified tire marks near Plaintiff's location after reviewing the footage. (Doc. 45, Flamm Dep. at PageID 927-28, 977-78). Flamm identified a yaw mark crossing the crosswalk line in Kunz's body-camera footage and explained that, although Plaintiff stood outside the original tape, documented evidence extended beyond that boundary and the scene needed to be expanded. (*Id.* at PageID 980-83). He further testified that tire marks are short-lived evidence susceptible to alteration or dissipation and that a crash-scene perimeter must be large enough to encompass the evidence. (*Id.* at PageID 970-72). Flamm could not say that Plaintiff stood directly on a tire mark, but placed him within the evidence area. (*Id.* at PageID 981).

down that way," pointing east up Spring Grove Avenue, away from the crash scene. (Doc. 35-9, Andrus BWC at 2:00-23. *See also* Doc. 10, Kunz BWC at 0:10-32 (depicting Kunz's pointing gestures[2])). Kunz explained that "because this is a crime scene, you are in the street, you gotta go back down that way." (Doc. 35-9, Andrus BWC at 2:14-20). Plaintiff replied, "Nope. Nope I don't" and then said to Kunz, "let me educate you just like I did the other guys . . . I don't care what you are telling me, stop talking, read, read, read," attempting to have Kunz read a card he prepared to explain his legal rights around crime scenes. (Doc. 35-9, Andrus BWC at 2:20-35; Doc. 35, Andrus Dep. at PageID 440). Kunz indicated that he did not need to read Plaintiff's materials and attempted to direct Plaintiff away from the scene, grabbing Plaintiff by the arm and stating "let's go this way," "go this way," or "let's go" approximately nine more times during their encounter. (Doc. 10, Kunz BWC at 0:30-43; Doc. 35-9, Andrus BWC at 2:30-2:50). Plaintiff insisted that Kunz read his legal materials and warned Kunz not to touch him unless he wanted to be sued. (Doc. 35-9, Andrus BWC at 2:30-3:00). Kunz told Plaintiff he was "about to get arrested" and that he was "moving the crime scene back here." (Doc. 10, Kunz BWC at 0:35-47; Doc. 35-9, Andrus BWC at 2:45-2:56). Kunz testified that, while he was attempting to escort Plaintiff from the area to be incorporated into the expanded crime scene, Plaintiff pulled away and attempted to walk back toward the original crime-scene tape. (Doc. 41, Kunz Dep. at PageID 836, 843. *See also* Doc. 10, Kunz BWC at 0:36-55; Doc. 35-9, Andrus BWC at 2:56-3:02). Plaintiff continued to insist that the officers read his materials and responded, "Then arrest me. Arrest me. I'll go to jail." (Doc. 10, Kunz BWC at 0:47-56;

[2] Sgt. Kunz's camera is without audio until approximately 0:30; however, the recording before this depicts Kunz pointing repeatedly.

Doc. 35-9, Andrus BWC at 2:55-3:04). At this point, Kunz stated "You will go to jail," handcuffed Plaintiff, and escorted him to his police car. (Doc. 10, Kunz BWC at 0:59-1:54; Doc. 35-9, Andrus BWC at 3:07-4:02).

While detained in the back of the police car, Plaintiff observed a Duke Energy truck enter the taped-off area and saw two pedestrians walking through the area. (Doc. 35, Andrus Dep. at PageID 460-62). The Duke Energy employee was permitted to enter to address the downed electrical lines. (Doc. 41, Kunz Dep. at PageID 822; Doc. 39, Lehman Dep. at PageID 777-78). Plaintiff alerted Kunz to the pedestrians, and Kunz directed another officer to address them. (Doc. 41, Kunz Dep. at PageID 847-48). The pedestrians left when directed, without incident or arrest. (Doc. 35-1 at PageID 549; Doc. 49 at PageID 1058).

Plaintiff reported chest pain to Kunz while detained in the police car. Kunz requested medical assistance, and responding personnel assessed Plaintiff and transported him to the hospital for further evaluation. (Doc. 35, Andrus Dep. at PageID 455-58; Doc. 41, Kunz Dep. at PageID 851-52). Before Plaintiff left for the hospital, Kunz issued him a notice to appear on a charge of Obstructing Official Business, a second-degree misdemeanor under Ohio Rev. Code § 2921.31. (Doc. 41, Kunz Dep. at PageID 852; Doc. 35-1 at PageID 549; Doc. 47-1 at PageID 1031). The criminal case was ultimately dismissed on June 25, 2024. (Doc. 48 at PageID 1054; Doc. 50 at PageID 1092).

Plaintiff filed the instant action on October 11, 2024 against Sgt. Kunz and the City of Cincinnati. He asserts seven claims: false arrest (Count I), Fourth Amendment unreasonable seizure (Count II), First Amendment retaliation (Count III), malicious

prosecution (Counts IV & V), abuse of process (Count VI), and a claim seeking injunctive relief (Count VII). (Doc. 1).

Defendants have filed a motion for summary judgment, which Plaintiff opposes. (Docs. 47, 49).

**III. Counts I, II, IV, and V: Probable Cause**

Counts I, II, IV, and V each require Plaintiff to establish an absence of probable cause for the challenged arrest or prosecution. Count I alleges false arrest under Ohio law; Count II alleges an unreasonable seizure under the Fourth Amendment; and Counts IV and V allege malicious prosecution under Ohio law and the Fourth Amendment, respectively. (Doc. 1). Although these claims include different elements, the absence of probable cause is common to each.[3]

Probable cause exists when the facts and circumstances within an officer's knowledge, based on reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect has violated or is violating the law. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). *See also Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) ("a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime"); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005) (an officer has probable cause when he discovers reasonably reliable

[3] Under Ohio law, a claim of false arrest is defeated by a showing of probable cause. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005) ("an arrest based on probable cause is a lawful detention and, thereby, serves to defeat a false arrest/imprisonment claim"). The same is true for Fourth Amendment claims asserting unreasonable seizure. *Howse v. Hodous*, 953 F.3d 402, 406 (6th Cir. 2020) ("Under the Fourth Amendment, an officer can seize someone so long as he has probable cause that the person has violated the law."). State-law and federal claims for malicious prosecution also both require a showing of the absence of probable cause. *See Trussell v. General Motors Corp.*, 559 N.E.2d 732, 734 (Ohio 1990); *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

information that a suspect has committed a crime). The standard requires only a "probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)). The probable-cause inquiry is objective. For the arrest-based claims, the Court considers the facts and circumstances known to the officer at the time of the arrest, rather than information acquired afterward or the officer's subjective intent. *Jones v. Naert*, 121 F.4th 558, 565 (6th Cir. 2024). *See also McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 517 (6th Cir. 2001) ("[T]he objective reasonableness of the facts relevant to a probable cause determination is paramount, and the officer's subjective intentions are irrelevant.") (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). The Court may resolve probable cause as a matter of law when only one reasonable determination is possible. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

In this case, Kunz arrested and charged Plaintiff under Ohio Rev. Code § 2921.31(A). To establish the offense of obstructing official business, the State would have to prove that Plaintiff "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re S.J.,* 225 N.E.3d 368, 373 (Ohio App. 1 Dist. Sept. 27, 2023). An "affirmative act" includes "any conduct, physical or verbal, that hampers or impedes the officer in the performance of his or her duties"; a mere failure to act or failure to obey an officer's order does not suffice. *State v. Terry*, No. C-240381, 2025 WL 1009295, at *2 (Ohio App. 1 Dist. Apr. 4, 2025); *State v. Carroll,* 834 N.E.2d 843, 846 (Ohio App. 1 Dist. Aug. 5, 2005). The statute does not criminalize every "minor delay,

annoyance, irritation, or inconvenience" to police. *State v. Harris*, 121 N.E.3d 21, 28 (Ohio App. 4 Dist. Oct. 17, 2018). Rather, the conduct must create a "substantial stoppage" of the officer's progress. *In re S.J.* at 375 ("This stoppage is not defined by a particular period of time, but it must occur because of the defendant's act.").

As an initial matter, the record in this case supplies an objective, corroborated basis for expanding the perimeter to include the area where Plaintiff was standing. Officers were investigating a fatal car crash and tire-mark evidence extended beyond the original taped perimeter into the area near where Plaintiff stood. Kunz testified that he observed those marks before approaching Plaintiff and determined that the scene needed to be expanded to encompass them. (Doc. 41, Kunz Dep. at PageID 824-25, 830-31). Sgt. Lehman, who was present at the scene, also testified that she personally observed additional marks, but that Kunz was already working to expand the scene. (Doc. 39, Lehman Dep. at PageID 766-67). And Flamm's examination of the crash evidence and review of the footage further confirm that Plaintiff's location was within the evidence area, although outside the original tape. (*See supra* n.1). This evidence establishes a legitimate evidence-preservation basis for expanding the perimeter to encompass the area where Plaintiff stood and directing him to move away from that area.

However, the existence of a legitimate basis for directing Plaintiff to move does not, standing alone, establish probable cause to arrest him for obstruction. The remaining question is whether Plaintiff's response supplied probable cause to believe that he affirmatively and purposefully impeded that authorized task.

Plaintiff principally relies on *In re S.J.*, 225 N.E.3d 368, 373 (Ohio App. 1 Dist. Sept. 27, 2023), arguing that like the juvenile in that case, he committed no affirmative act,

intended only to record police activity, was privileged to do so, and did not substantially impede any official duty. (Doc. 49 at PageID 1060-64). In that case, a 16-year-old girl was recording the police arrest another person on a public sidewalk. She immediately complied with an initial instruction to back up, but later refused to leave the street, shaking her head and telling the officer to stop talking to her. *In re S.J.* at ¶¶ 9-10, 25. The court found that her failure to obey and inaction regarding the subsequent directions did not constitute an affirmative act of obstruction. *Id.* at ¶¶ 24-25. The court further determined that her purpose was to record and that evidence did not establish interference with the officer's ability to assist with an arrest or perform another official duty. *Id.* at ¶ 28, 29-42.

With respect to the affirmative-act requirement in this case, Plaintiff did not simply remain in place and continue recording. Kunz testified that, during his effort to escort Plaintiff from the area, Plaintiff pulled away and continued trying to walk back towards the initial crime scene tape. (Doc. 41, Kunz Dep. at PageID 836, 843). The contemporaneous criminal complaint also describes Plaintiff pulling away and declaring that he would not move from that spot while Kunz attempted to guide him away to expand the crime scene. (Doc. 47-1 at PageID 1031). The video footage depicts Plaintiff withdrawing his arm, turning, and moving back toward the initial crime scene perimeter as Kunz attempted to guide Plaintiff from the area. (Doc. 10, Kunz BWC at 0:36-55). Whether Plaintiff turned to return toward the initial perimeter or toward the other officers, his arm withdrawal and turn counteracted Kunz's efforts to relocate him. Those physical movements distinguish this case from the mere refusal and verbal disagreement found insufficient in *In re S.J.*. *See State v. Carrion*, No. C-230070, 2023 WL 8447480, at *3 (Ohio App. 1 Dist. Dec. 6, 2023)

(finding that placing a hand against a wall, tucking wrists, and tensing muscles to avoid handcuffing constituted affirmative acts beyond a failure to act).

The circumstances also permitted a reasonable inference of purposeful interference. Kunz repeatedly directed Plaintiff away from the area, pointed down Spring Grove Avenue, and stated during the encounter that he was "moving the crime scene back here." (Doc. 35-9, Andrus BWC at 2:15-55; Doc. 10, Kunz BWC at 0:10-48). Sergeant Lehman also recalled hearing Kunz explain that officers were making the scene larger and Plaintiff needed to step back. (Doc. 39, Lehman Dep. at PageID 768-69). Although Kunz did not identify an ultimate destination or the precise extent of the contemplated perimeter, the footage depicts repeated directional instructions to move away. Plaintiff acknowledged, after reviewing the footage, that Kunz was pointing away from the scene, although he testified that he had not noticed the gestures at the time. (Doc. 35, Andrus Dep. at PageID 449).

In response, Plaintiff demanded that Kunz stop speaking, stated that he did not care what Kunz had to say, insisted that Kunz read his legal materials, rejected the directions to move, continuously interrupted Kunz, and invited arrest. Plaintiff described himself as "challenging" Kunz and attempting to "educate" him about Plaintiff's asserted entitlement to remain where he was. (Doc. 35, Andrus Dep. at PageID 447, 449-50). Considered with the communicated perimeter expansion and Plaintiff's pulling away and turning against the attempted relocation, those statements supported a reasonable belief that he was deliberately opposing Kunz's efforts to clear the evidence area.[4]

[4] Plaintiff's asserted privilege to record does not resolve whether he was privileged to engage in the conduct supplying probable cause. In *In re S.J.*, the juvenile was privileged to record the arrest, and the evidence failed to establish the requisite obstructive conduct. *In re S.J.* at ¶¶ 24-25, 32-33, 39-42. Here, the Court's determination does not rest on Plaintiff's recording or his initial presence outside the taped perimeter.

The record also identifies the official task impeded and the resulting interruption. Plaintiff's actions interrupted Kunz's efforts to guide Plaintiff from the area and expand the crime scene. The video footage, consistent with the account in the contemporaneous complaint, depicts several attempts to move Plaintiff before Kunz advised him that he was under arrest. (Doc. 35-9, Andrus BWC at 2:15-55; Doc. 47-1 at PageID 1031). The interference thus arose during the effort to clear the evidence area, not merely from the time spent discussing Plaintiff's objections or subsequently processing his arrest. Unlike in *In re S.J.*, the record connects affirmative conduct to an impediment to a particular authorized task. And although the encounter was brief, a substantial stoppage is not defined by a fixed period of time. *In re S.J.* at ¶35. Plaintiff's response supplied probable cause to believe that he was hampering the effort to clear and secure the area.

Plaintiff disputes whether Kunz actually observed the tire marks before approaching him, emphasizing that Kunz never mentioned them and that Plaintiff saw him speaking with other officers rather than following the marks. (Doc. 49 at PageID 1064-67; Doc. 35, Andrus Dep. at PageID 452). This challenge concerns Kunz's knowledge at the time of their interaction, not merely his subjective motive. But neither observation contradicts Kunz's testimony that the marks were visible behind Plaintiff when he first directed him to move, and their existence and location are corroborated by the crash investigation and footage. (Doc. 41, Kunz Dep. at PageID 830-31; *see supra* n.1). Kunz

---

Rather, it rests on his response to Kunz's effort to clear an area containing evidence.

*Smith v. City of Wyoming*, 821 F.3d 697, 716 (6th Cir. 2016), also does not require a different result. In that case, the Sixth Circuit determined that, viewing the evidence in the plaintiff's favor, her hand withdrawal could have been an involuntary reaction to an unexpected touch, and she otherwise complied with the officer's directions. Here, the inference of purpose rests not on Plaintiff's arm withdrawal alone, but on his physical response considered together with his contemporaneous statements and continued opposition to relocating.

announced the perimeter expansion during the encounter, documented the effort in the criminal complaint, and— immediately after Plaintiff was escorted to the police car—officers moved the tape to encompass the additional evidence. (Doc. 45, Flamm Dep. at PageID 979-80, 983-84; Doc. 41, Kunz Dep. at PageID 834. *See also* Doc. 10, Kunz MVR at 34:05-38:21). The subsequent expansion does not retroactively supply probable cause, but corroborates that the task announced during the encounter was actually undertaken. The Court need not determine that evidence preservation was Kunz's sole subjective concern to conclude that the facts known to him supplied probable cause to believe Plaintiff was impeding the authorized expansion.

In sum, viewing the evidence and reasonable inferences in Plaintiff's favor, the record establishes probable cause to arrest Plaintiff for obstructing official business and to initiate that charge. Plaintiff therefore cannot establish the absence of probable cause necessary for Counts I, II, IV, and V. Defendants are entitled to summary judgment on those claims.

**IV. Count III: First Amendment Retaliation**

Plaintiff also alleges that Kunz arrested him in retaliation for recording police activity and that the City's policies or customs caused the alleged constitutional deprivation. (Doc. 1, Complaint at PageID 7-8).

A First Amendment retaliation claim requires a plaintiff to establish that he engaged in protected conduct, suffered an adverse action that would deter a person of ordinary firmness from continuing that conduct, and that the adverse action was motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In *Nieves v. Bartlett*, 587 U.S. 391 (2019), the Supreme Court held that a plaintiff asserting

a retaliatory-arrest claim generally must plead and prove the absence of probable cause. *Id.* at 402, 405-07. A narrow exception to this rule permits a claim to proceed when the plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech were not. *Id.* at 407. Under this exception, a plaintiff need not identify virtually identical, identifiable comparators; other objective evidence of non-enforcement may suffice. *Gonzalez v. Trevino*, 602 U.S. 653, 658-59 (2024). *See also Grady v. Cratsenburg*, 170 F.4th 995, 1001 (6th Cir. 2026).

As explained above, probable cause supported Plaintiff's arrest for obstructing official business. Plaintiff nevertheless contends that he was treated differently from individuals who were not recording police officers. Specifically, he points to pedestrians who entered the taped area and a Duke Energy employee whose vehicle was permitted to enter without an arrest. (Doc. 35, Andrus Dep. at PageID 460-63; Doc. 49 at PageID 1071-72). However, those individuals were not similarly situated to Plaintiff with respect to the conduct supplying probable cause for his arrest. *See Grady,* 170 F.4th at 1004-05 (explaining that proposed comparators must have engaged in conduct similar to that supplying probable cause for plaintiff's arrest).

Plaintiff acknowledged that he did not observe what happened to the pedestrians after Kunz exited the cruiser and did not know whether they were directed to leave. (Doc. 35, Andrus Dep. at PageID 462-63, 475-76). Kunz testified that he alerted another officer to the pedestrians, and the subsequent investigative report states that they immediately complied with directions to leave. (Doc. 41, Kunz Dep. at PageID 847-48; Doc. 35-1 at PageID 549). The utility employee likewise was not similarly situated. Duke Energy

personnel entered to address live electrical wires. (Doc. 37, Neville Dep. at PageID 701; Doc. 39, Lehman Dep. at PageID 777-78). Although Plaintiff argues the truck's entry could have affected tire-mark evidence, that possibility does not establish comparable obstructive conduct. (Doc. 49 at PageID 1071). Plaintiff identifies no evidence that either the pedestrians or the utility employee physically resisted an effort to relocate them or otherwise impeded the expansion of the crime scene perimeter. Their entry without arrest therefore does not establish differential treatment of similarly situated individuals.

Plaintiff also argues that officers' awareness of police involvement in the crash gave Kunz a reason to prevent him from recording the aftermath of potential misconduct. (Doc. 49 at PageID 1069-70). An internal-investigation report concluded that an officer engaged in an unauthorized pursuit leading to the crash. (Doc. 49-1 at PageID 1085-88). This report identifies potential misconduct preceding the crash, but does not establish that Kunz arrested Plaintiff to suppress documentation of its aftermath. Plaintiff acknowledged that Kunz did not tell him he could not record, direct him to stop recording, ask why he was recording, or request his media credentials. (Doc. 35, Andrus Dep. at PageID 448-49). In any event, even if the circumstances surrounding the crash supported an inference of retaliatory motive, that inference alone would not overcome the probable-cause bar applicable to Plaintiff's claim. *Nieves,* 587 U.S. at 407 (explaining that the arresting officer's statements and motivations are irrelevant to the objective inquiry governing the exception).

Because Plaintiff's arrest was supported by probable cause and he has not presented objective evidence sufficient to invoke the limited exception set forth in *Nieves*, Kunz is entitled to summary judgment on Count III. Plaintiff's related municipal-liability

claim also fails because he has not established an underlying constitutional violation arising from the arrest.[5] His asserted failures to train, supervise, or discipline cannot support liability for his arrest under *Monell v. Dept. of Soc. Services*, 436 U.S. 658 (1978). *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that municipal liability could not rest on an officer's conduct where the plaintiff suffered no constitutional injury).

**V. Count VI: Abuse of Process**

Plaintiff alternatively alleges that Kunz used the criminal proceeding to deter him from recording police activity. (Doc. 1, Complaint at PageID 10-11). Under Ohio law, abuse of process requires a proceeding initiated in proper form and with probable cause, a perversion of that proceeding to accomplish an ulterior purpose for which it was not designed, and resulting direct damage. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (1994). An improper motive alone is insufficient: there is no liability when a defendant merely carries the process to its authorized conclusion, even with bad intentions. *Id.* at n.2. In other words, the plaintiff must identify both an ulterior purpose and an act committed during that process that was improper in the normal conduct of the proceeding. *Atsas v. Bowen*, No. 25-3551, 2026 WL 1694870, at *8 (6th Cir. June 11, 2026).

Plaintiff argues that his arrest and prosecution were intended to prevent or to deter his recording, again relying on the different treatment of the pedestrians and utility employee. (Doc. 49 at PageID 1071-72). That argument identifies an alleged ulterior purpose, but not an improper use of the criminal proceeding to accomplish it. Even

[5] Plaintiff has not identified objective evidence that his arrest implemented a premeditated official municipal policy of retaliation for protected speech. The narrow exception recognized in *Lozman v. City of Riviera Beach*, 585 U.S. 87, 99-101 (2018), therefore does not apply.

assuming that purpose, Plaintiff identifies no act by Kunz that perverted the criminal process. Kunz is entitled to summary judgment on Count VI.

**VI. Count VII: Injunctive Relief**

Finally, in Count VII, Plaintiff seeks an injunction prohibiting Defendants from unlawfully restricting access to observe or record newsworthy events and from wrongfully arresting or charging persons lawfully exercising their rights. (Doc. 1 at PageID 11-12). Although the parties do not separately address Count VII, the Court must independently determine whether Plaintiff has standing to seek prospective relief. Such standing requires a real and immediate threat of future injury. Past exposure to allegedly unlawful conduct alone does not suffice. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-106 (1983). *See also Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832-34 (6th Cir. 2001) ("[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief.").

Plaintiff continues to document police activity, although he attests that his news gathering has diminished out of concern about another arrest. (Doc. 35, Andrus Dep. at PageID 457-58, 478-81). Plaintiff also described earlier encounters in which he claims officers have restricted his access. (*Id.* at PageID 413-23). Plaintiff's prior encounters and continued work do not establish a real and immediate threat that Defendants will unlawfully arrest him or unconstitutionally restrict his recording in the future. His concern about recurrence does not substitute for a concrete threat of future injury. *See Lyons*, 461 U.S. at 105-06, 111; *Fieger v. Michigan Supreme Court,* 553 F.3d 955, 966-67 (6th Cir. 2009). Plaintiff therefore lacks standing to seek the requested prospective relief, and Count VII is dismissed without prejudice for lack of subject-matter jurisdiction.

## VII. Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts I through VI. Count VII is **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge